IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

_____

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>      Plaintiff,<br><br>v.<br><br>FEMAIL EXPRESS CARRIERS LLC, ANNETTE FRANKLIN, and ERIKA ROBERTS MOORE,<br><br>      Defendants. | Civil Action No. 3:24-cv-2137 |

# COMPLAINT

The United States of America, on behalf of the United States Postal Service, brings claims against Defendants FeMail Express Carriers LLC, Annette Franklin, and Erika Roberts Moore, as follows:

## I.    INTRODUCTION

1. This is an action for damages and civil penalties arising from false claims presented or caused to be presented by Defendants to the United States in violation of the False Claims Act, 31 U.S.C. § 3729-33, as well as the common law and equitable theories of fraud, and unjust enrichment.

2. The claims in this case arise from Defendants' role in causing the Postal Service to award approximately $250,000.00 in contracts to FeMail by misrepresenting Moore's familial ties to Franklin. Specifically, Franklin is Moore's mother and, while Franklin was employed as a Postal Service Office Clerk of Vehicle Operations at Postal

Service facility in Coppell, Texas, she assisted Moore, the sole owner of FeMail, to become a contract supplier for mail delivery services.  Moore's status as a family member of a Postal Service employee would have disqualified her company from receiving the contracts in question, but this fact was not disclosed to the Postal Service on the relevant contractual documents.

3. As described more fully below, from March 2019 through January 2021, Defendants submitted, or conspired to submit or cause to be submitted, false statements material to claims in order to obtain the award of Transportation Services contracts from the Postal Service to FeMail, and then obtained resulting payments under these contracts. In connection with the award of these contracts, Moore certified under penalty of perjury or caused certifications or statements to be made that she was not related to any Postal Service employee and/or that she did not reside in the household of any Postal Service employee, with knowledge or reckless disregard for the truth of the matter that Postal Service employee Franklin is her mother and that she resided in Franklin's household at the time of the certification.  These false statements induced or resulted in the Postal Service's award of these contracts, and the resulting several hundred thousand dollars in payments made under the contracts, to FeMail.  Defendants, therefore, are liable to the United States under the False Claims Act for treble damages and civil penalties as permitted by law.

4. Additionally, through these actions, Defendants intended to defraud the government through the submission of material misrepresentations, the government reasonably relied upon these representations, and the government suffered damages as a

result of such reliance in making payments to an ineligible contractor and through the diversion of contractual opportunities that were intended for eligible contractors. As a result, Defendants are responsible for common law fraud and are liable to the government for damages.

5. Further, as a result of Defendants' misrepresentations and fraudulent conduct, Defendants were unjustly enriched at the government's expense, and equity and good conscience militate against permitting Defendants to retain this enrichment. Defendants, therefore, are liable to the government for all moneys unjustly enriched.

## II.   JURISDICTION AND VENUE

6. This Court has jurisdiction under 31 U.S.C. § 3730(a) and 28 U.S.C. §§ 1331 & 1345.

7. This Court may exercise personal jurisdiction over each Defendant pursuant to 31 U.S.C. §§ 3732(a) & (b). Jurisdiction is proper over each Defendant because one or more of the Defendants transacts business in the Northern District of Texas and acts committed in violation of the False Claims Act by the Defendants occurred in the Northern District of Texas.

8. Venue is proper in the Northern District of Texas under 31 U.S.C. § 3732, 28 U.S.C. §§ 1391(b)-(c), and 28 U.S.C. § 1395 because Defendants transacted business in the Northern District of Texas or because a substantial part of the events or omissions giving rise to the claims occurred in the Northern District of Texas. Among other things, the contracts at issue required performance within the Northern District of Texas, and Franklin worked at a Postal Service facility within this district at the relevant time.

### III.   PARTIES

9. Plaintiff United States brings this action on behalf of the United States Postal Service.

10. Defendant FeMail Express Carriers LLC is a former contract supplier for mail delivery services incorporated in the State of Texas. Its address as listed on its LLC form is 805 Stoneway Drive, Denton, TX 76210. It may be served through its registered agent, Erika Roberts Moore, 3809 Twilight Drive, Temple, TX 76502.

11. Defendant Annette Franklin is a former employee of the Postal Service. Franklin may be served at her place of residence, 805 Stoneway Drive, Denton, TX 76210. Franklin, while serving as a Postal Service employee, assisted her daughter Moore in securing contracts with the Postal Service.

12. Defendant Erika Moore is a former Postal Service supplier and contractor. She is the owner of FeMail. Moore may be served at her place of residence, 3809 Twilight Drive, Temple, TX 76502.

### IV.   FACTUAL BACKGROUND

13. This case relates to contracts that the Postal Service solicits and award for suppliers who can assist with the delivery of mail for specific travel routes. Typically, a solicitation for bids is posted for application and made available to any/all suppliers. Once the application period has concluded, contract officers review the applications and submit a recommendation. If the recommended supplier is eligible to serve as a Postal Service contractor, certifies that it has no conflicts of interest, and meets the capability requirements, the applicant may be confirmed as a Postal Service supplier. Discussed in

more detail below, the supplier contract requires various certifications to be made by the supplier, including a requirement to disclose any relationship it may have with Postal Service employees.

### A.     Moore starts FeMail while working for another Postal Service contractor.

14.    Prior to forming FeMail, Moore was employed by a Postal Service contractor, Tamara Wimmer. While still employed by Wimmer, Moore registered FeMail to do business in the State of Texas in August 2018 and listed her mother Franklin's residential address as FeMail's business address.

15.    Around this time, Franklin began forwarding internal Postal Service documents to Moore that were relevant to Moore's apparent intention to seek mail-carrying contracts for Femail. These included meeting minutes, the identity of the Express Coordinator, clearance access for other employees, and insider information on upcoming contract solicitations, including when the Postal Service was looking for new suppliers. To conceal their relationship, Franklin gave explicit instructions to Moore to avoid sending messages to her official email or mentioning their relationship in conversations with Postal Service employees. On one occasion, for example, Franklin provided Moore with the contact information of a Postal Service employee, with the warning, "WHATEVER YOU DO…………DO NOT MENTION MY NAME!!!!!!!!!!!!!!"

```
From:          Franklin, Annette - Coppell, TX
To:            "E.Roberts0118@yahoo.com"
Subject:       Carla Young
Date:          Thursday, August 30, 2018 4:33:14 PM
Attachments:   image001.png
```

WHATEVER YOU DO………..DO NOT MENTION MY NAME!!!!!!!!!!!!!!

Likewise, when on another occasion Moore sent Franklin what was apparently a draft of an email that Moore was planning to send to another Postal Service employee, Franklin responded with the warning, "Do not send me anything!!!!"

```
From:      Franklin, Annette - Coppell, TX
To:        Erika Roberts
Subject:   RE: [EXTERNAL] Erika Roberts
Date:      Friday, September 21, 2018 3:01:23 PM
```

Do not send me anything!!!!

From: Erika Roberts [mailto:e.roberts0118@yahoo.com]
Sent: Friday, September 21, 2018 3:01 PM
To: Franklin, Annette - Coppell, TX <Annette.Franklin@usps.gov>
Subject: [EXTERNAL] Erika Roberts

Afternoon,

Hi Donna we spoke earlier on the phone about some issues I've been having on the USPS eSourcing page. I have been running express for a couple years now and Ive learned so much about the USPS and how its mail is ran and operated. I am aware of all safety rules and regulations by the USPS and I am familiar with the steps and procedures of having a successful carrier business working for the USPS. I was formerly working under a local contractor in North Texas. I am now trying to venture out on my own and get a few contracts to start my business. I am a new business owner and single mother of twin girls who is up for any challenge. I have successfully registered my

16.     In January 2019, Wimmer unexpectedly passed away while she held a Postal Service contract.

**B.     Moore makes false statements to secure FeMail's first Postal Service contract.**

17.     On February 8, 2019, Moore contacted Postal Service Purchasing Analyst Benita Townsend to advise the Postal Service of the death of her employer, Tamara

Complaint – Page 6

Wimmer. In addition to notifying the Postal Service of Wimmer's death, Moore falsely represented that she was the "[s]ilent partner" for Wimmer and offered to keep Wimmer's current contract. Moore's false representation led the Postal Service to issue an emergency solicitation directly to Moore to fill the vacancy created by Wimmer's death.[1] And as the only solicitation recipient, Moore successfully obtained the contract.

18. On February 21, 2019, Postal Service Purchasing Analyst Benita Townsend emailed the emergency solicitation to Moore. This email contained a notice that employees of the Postal Service and members of their immediate families were ineligible to become suppliers, as shown here:

> NOTE:
> Supplier Eligibility:
> The offerors' ability to meet all the required criteria that are necessary to perform operations, to include the following:
>
> a. Persons ineligible to become suppliers.
>   1. Employees of the U.S. Postal Service or members of their immediate families.
>   2. Business organizations substantially owned or controlled by Postal Service employees or their immediate families.
>   3. Suppliers suspended, debarred, ineligible or proposed for suspension, debarment, or ineligibility are also excluded from conducting business with the Postal Service as agents, subcontractors, or representatives of other suppliers.

Moore also filled out a representations and certifications document that, among other things, required her to identify for an entity applying for a contract if the entity was owned by a family member of a Postal Service employee or resided in the same household as a Postal Service employee, but Moore did not indicate that any of these conditions existed, as shown here:

---

[1] An emergency solicitation allows Postal Service to bypass the traditional posting requirements to expedite the solicitation process by only soliciting one supplier.

**Complaint – Page 7**

> The following applies to Highway Contract Route __762 DV__.
>
> Provision 4-3: Representations and Certifications (November 2012)
>
> \* \* \*
>
> b. Is (check all that apply)
>
> \* \* \*
>
> - __ a Postal Service employee or a business organization substantially owned or controlled by such an individual
> - __ a spouse of a Postal Service employee or a business organization substantially owned or controlled by such an individual
> - __ another family member of a Postal Service employee or a business organization substantially owned or controlled by such an individual
> - __ an individual residing in the same household as a Postal Service employee or a business organization substantially owned or controlled by such an individual.
> (Note: Offers from any of the sources listed in subparagraph A.3. may not be considered for an award pending review and recommendation by the Postal Service Ethics Office.)
>
> \* \* \*
>
> NOTE: Offerors MUST set forth full, accurate, and complete information as required by this solicitation (including attachments). The penalty for making false statements in offers is prescribed in 18 U.S.C. 1001.
>
> Erika Roberts                  /s/ Erika Roberts            3/8/19
> Supplier (printed)             Supplier (signed)            Date

19.     On February 23, 2019, Franklin retrieved multiple Postal Service contract files and emailed them to her personal Gmail account and another third party. In the following week, Franklin used her insider information from USPS to assist Moore in drafting a proposal for the emergency solicitation and filling out contract paperwork.

**Complaint – Page 8**

20. While working to submit the bid for the Emergency Solicitation 762DV, Moore continued to work the route and ultimately submitted her bid on or about March 8, 2019. Although she in fact resided at the same address as Franklin, Moore did not disclose in Provision 4-3: Representations and Certifications that she was "another family member of a Postal Service employee" or "an individual residing in the same household as a Postal Service employee." Moore signed this certification under penalty for making false statements in offers as prescribed by 18 U.S.C. § 1001.

22. On March 25, 2019, Townsend and Moore discussed the Pre-Award Conference form on the phone. Moore answered "No" in response to questions asking if she had any Postal Service employee relatives living in her household. In fact, though, Moore was living at the same residence as her mother, Franklin.

23. Relying on Moore's fraudulent representations and omissions, the Postal Service awarded contract 762DV to FeMail in the amount of $101,530.86.

**C.     Defendants continue to hide their relationship and obtain a second contract.**

27. In September 2019, the Postal Service issued contract solicitation 762A2. That solicitation received bids from six potential contractors, including FeMail. Around this time, Franklin diverted work to Moore and FeMail, and provided information, including about other Postal Service contracts, to Moore that would ultimately help Moore negotiate rates to acquire new contracts and underbid other suppliers.

28. As with the prior contract (762DV), Moore again omitted any mention of her relationship to Franklin when applying for contract 762A2, and thereby induced the Postal Service into awarding the contract to FeMail based on false information. The

terms and conditions that were made a part of the contract included Provision 4-3, which required identification of any business organization owned by a family member of a Postal Service employee or someone residing in the same household as a Postal Service employee. Moore also signed a pre-award conference form which, under the header "eligibility issues," she indicated here response that she did not have any Postal employee living in her household.

29. Relying on Moore's fraudulent representations and omissions, the Postal Service awarded contract 762A2 to FeMail in the amount of $92,019.09.

**D.   The Postal Service Discovers the Defendants' Fraud**

30. Postal Service agents discovered the relationship between Moore and Franklin after receiving a complaint from one of Franklin's coworkers that Franklin had been providing extra "trip slips" to Moore. "Trip slips" refer to a work authorization sheet for contractors to drive additional trips beyond their scheduled routes and earn more money. Through this investigation, it was discovered that Franklin and Moore conspired to conceal their scheme by lying to Postal Service agents about Franklin's role in tipping off Moore to internal Postal Service deliberations, procuring extra trips and contracts for FeMail, and misrepresenting Franklin and Moore's familial relationship when submitting contract bids on behalf of FeMail.

31. On July 7, 2020, Postal Service agents interviewed Franklin. When asked about Moore's Postal Service contracts, she denied having any relevant knowledge. Furthermore, she claimed that Consuelo Salinas (Franklin's mother), not Moore, was the owner of FeMail.

32. The next day, Franklin returned for a follow-up interview. However, she reversed course from her prior claims, admitting that she had assisted her daughter with obtaining Postal Service contracts. She confessed that Moore, her daughter, owned FeMail, and that the two of them used the name of Consuelo Salinas to hide their email communications.

33. Towards the end of 2020, Franklin applied for immediate retirement, and officially separated from the Postal Service on February 28, 2021.

E. **The Postal Service Terminates FeMail's Contract for Default**

34. Once the Postal Service became aware of the facts of Franklin and Moorer's relationship, it terminated her then-current contract with the Postal Service (contract 762A2), on January 15, 2021 as outlined below:

> Enclosed is a copy of PS Form 7440 terminating your right to perform service on Highway Contract Route ("HCR") No. 762A2 (the "Contract") effective January 16, 2021. This action is being taken pursuant to Clauses 4-1(m) and B-69(a) of the Terms and Conditions associated with your contract.
>
> It is our understanding that the following facts have occurred:
>
> - The proposal submitted by you for the Contract, including representations and certifications signed by you, failed to disclose that your mother, Annette Franklin, is a Postal Service employee.
> - You received improper assistance from your mother, Annette Franklin, who is the Office Clerk of Vehicle Operations at the Dallas P&DC. The assistance provided by your mother included assisting you with the preparation and submission of your proposal, and providing you with competitors' pricing information
> - During performance of the Contract you and your drivers discarded extra trip slips that were properly provided under the Contract, and obtained different extra trip slips from your mother, Annette Franklin.
>
> These facts represent a material breach of your contractual terms. You are liable to the Postal Service for any damages occasioned by your breach of contract, including any excess costs incurred by the Postal Service for replacement service. You are also liable for repayment of any amounts wrongfully paid to you under Clause B-64. You will be notified in another final decision letter of any Postal Service claim for excess costs of re-procurement or any other damages. In addition, you are to immediately surrender all Postal Service property (e.g., ID badge, keys, etc.) that you and any of your drivers have in their possession to the Administrative Official in the Denton, TX.

35. The false information submitted by Moore resulted in FeMail's being awarded Postal Service contracts that it was not entitled to and that it otherwise would not have received. To date, the Postal Service has not been reimbursed the payments it

made under the contracts to FeMail, including both the base amounts of the contracts and any extra work performed thereunder through the provision of "trip slips."

## V.   THE LAW

**A.   The False Claims Act**

38.   The False Claims Act provides for the award of treble damages and civil penalties for, *inter alia*, knowingly causing the submission of false or fraudulent claims for payment to the United States government.  31 U.S.C. § 3729(a)(1).

39.   The False Claims Act establishes liability to the United States for any individual or entity that: "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval," 31 U.S.C. § 3729(a)(1)(A); "knowingly makes, uses, or causes to be made or used, as false record or statement material to a false or fraudulent claim," *id*. § 3729(a)(1)(B); or "conspires to commit a violation of subparagraph (A) [or] (B)," *id.* § 3729(a)(1)(C).

40.   To show that an individual or entity acted "knowingly" for purposes of the False Claims Act, the United States must establish that such individual or entity: (1) has actual knowledge of the information; (2) acts in deliberate ignorance of the truth or falsity of the information; or (3) acts in reckless disregard of the truth or falsity of the information.  31 U.S.C. § 3729(b)(1).  No proof of specific intent to defraud is required.  *Id*.

## COUNT I
Violations of the False Claims Act:
Submission of False Claims for Payment
31 U.S.C. § 3729(a)(1)(A)

41. The United States realleges and incorporates by reference the preceding paragraphs as if fully set forth in this paragraph.

42. The United States seeks relief against Defendants for their violations of the False Claims Act, 31 U.S.C. § 3729(a)(1)(A).

43. In connection with the foregoing schemes, Defendants knowingly, or with deliberate ignorance or reckless disregard for the truth, presented and/or caused to be presented to the government false or fraudulent claims for payments.

44. By reason of these false claims, the United States has sustained damages in an amount to be determined at trial, and is entitled to a civil penalty as required by law for each violation.

## COUNT II
Violations of the False Claims Act:
Making or Using a False Record of Statement
31 U.S.C. § 3729(a)(1)(B)

45. The United States incorporates by reference the preceding paragraphs as if fully set forth in this paragraph.

46. The United States seeks relief against Defendants under 31 U.S.C. § 3729(a)(1)(B).

47. In connection with the foregoing schemes, Defendants knowingly, or with deliberate ignorance or in reckless disregard for the truth, made, used, or caused to be

made and used, false records and statements material to false and fraudulent claims that were made to the government.

48. By reason of these false claims, the United States has sustained damages in an amount to be determined at trial, and is entitled to a civil penalty as required by law for each violation.

## COUNT III
Conspiracy
31 U.S.C. § 3729(a)(1)(C)

48. The United States realleges and incorporates by reference the preceding paragraphs as if fully set forth in this paragraph.

49. The United States seeks relief against Defendants under 31 U.S.C. § 3729(a)(1)(C).

50. As set forth above, in connection with the foregoing schemes, Defendants and their co-conspirators knowingly, or with deliberate ignorance or in reckless disregard for the truth conspired to submit or cause to be submitted a false claim, or conspired to make, use or cause to be made or used false records and statements material to false and fraudulent claims that were made to the government, and took actions to further these conspiracies.

51. By reason of these false claims, the United States has sustained damages in an amount to be determined at trial, and is entitled to a civil penalty as required by law for each violation.

## COUNT IV
Common Law Fraud

52. The United States realleges and incorporates by reference paragraphs 1-40 as if fully set forth in this paragraph.

53. Defendants made material misrepresentations of fact, with knowledge of, or in reckless disregard of, their truth, in connection with the claims for payment submitted by, or on behalf of, Defendants to the United States.

54. Defendants intended that the United States rely upon the accuracy of these false representations referenced above.

55. The United States made substantial payments of money in justifiable reliance upon Defendants' false representations.

56. Defendants' actions cause the United States to be damaged in a substantial amount to be determined at trial.

## COUNT V
Unjust Enrichment

57. The United States realleges and incorporates by reference paragraphs 1-40 as if fully set forth in this paragraph.

58. The United States asserts a claim under federal common law for recovery of monies by which Defendants have been unjustly enriched.

59. By virtue of the conduct and the acts described above, Defendants were unjustly enriched at the expense of the United States in an amount to be determined, which, under the circumstances, in equity and good conscience, should be returned to the United States.

## PRAYER FOR RELIEF

60. WHEREFORE, plaintiff, the United States requests that judgment be entered in its favor and against Defendants as follows:

    a. On the First, Second, and Third Claims for Relief (Violations of the False Claims Act, 31 U.S.C. § 3729(a)), for treble the United States' damages in an amount to be determined at trial, plus civil penalties for each false claim presented, together with all such relief as may be just and proper;

    b. On the First, Second, and Third Claims for Relief, an award of costs pursuant to 31 U.S.C. § 3729(a);

    c. On the Fourth Claim for Relief (Common Law Fraud), for an amount to be determined at trial, together with costs and interest;

    d. On the Fifth Claim for Relief (Unjust Enrichment), for an accounting and for amounts by which defendants were unjustly enriched, in an amount to be determined at trial, together with costs and interest; and

    e. All other relief this Court deems just and proper, including post-judgment interest and costs of this action.

## JURY DEMAND

The United States demands a jury trial in this case.

Respectfully submitted,

LEIGHA SIMONTON
UNITED STATES ATTORNEY

*/s/ Najib H. Gazi*
KATIE CARR JACOBS
Assistant United States Attorney
Texas Bar No. 24074332
NAJIB H. GAZI
Assistant United States Attorney
Texas Bar No. 24131329
1100 Commerce Street, Third Floor
Dallas, Texas 75242
Telephone:  214-659-8600
Facsimile:   214-659-8807
Katie.Jacobs@usdoj.gov
Najib.Gazi@usdoj.gov

***Attorneys for the United States of America***